**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL G. POSTAWKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-01053-CDP |
| | ) | |
| ANNE L. PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon review of plaintiff Michael G. Postawko's complaint pursuant to 28 U.S.C. § 1915A. For the reasons discussed below, the Court will dismiss the official capacity claims against all defendants; the individual capacity claims against defendants Anne Precythe, Cyndi Prudden, Troy Steele, Nicole Francis, Unknown Leggit, and Richard Tippen; and the state law claims brought against all defendants. However, the Court will direct defendant Scott Flieg to answer plaintiff's individual capacity claim that he retaliated against plaintiff in violation of the First Amendment.

### 28 U.S.C. § 1915A

Under 28 U.S.C. § 1915A, the Court is required to review a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(A)(a). The Court must dismiss a complaint if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(A)(b)(1).

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

At the time relevant to this complaint, plaintiff was an inmate at the Eastern Reception,

Diagnostic & Correctional Center (ERDCC) in Bonne Terre, Missouri. (Docket No. 1-3 at 4). He brings this action under 42 U.S.C. § 1983 and article 1, section 10 of the Missouri Constitution. (Docket No. 1-3 at 3). He names as defendants Anne Precythe; Cyndi Prudden; Troy Steele; Nicole Francis; Scott Flieg; Unknown Leggit; and Richard Tippen. Defendants are sued in both their official and individual capacities. Plaintiff alleges that defendants retaliated against him for his repeated use of the prison's grievance system and for filing lawsuits. The complaint consists of thirty-five handwritten pages and twenty-six exhibits.[1] Plaintiff further supplemented his complaint by filing exhibits twenty-seven through thirty on December 17, 2018. (Docket No. 11).

Plaintiff states that on June 3, 2017, he was returning to his cell following lunch. (Docket No. 1-3 at 5). When he arrived at his cell, the housing unit officer at the "control bubble" denied him entry by refusing to open his door. Meanwhile, other inmates who were returning from lunch were allowed into their cells.

Approximately twenty minutes later, plaintiff's cellmate, defendant Tippen, returned to the cell. Five or so minutes later, defendant Flieg, a correctional officer, came onto the wing and approached plaintiff and Tippen. Plaintiff states that Officer Flieg told them to "have a seat" at a table because he was going to search their cell. Plaintiff and Tippen complied, and Officer Flieg opened their cell door.

Once inside the cell, plaintiff claims that Officer Flieg pulled the cell door so that it was almost closed, just short of locking. (Docket No. 1-3 at 6). Next, plaintiff alleges that Officer Flieg covered the cell-door window with a piece of newspaper. According to plaintiff, Officer Flieg remained alone inside their cell for approximately ten minutes. When he emerged, wearing

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

"blue surgical type sterile gloves," he had nothing in his hands.

Officer Flieg directed plaintiff to accompany him to a sally port, where Flieg patted him down, placed him in handcuffs, and seated him on a stool in the housing unit caseworker's office. Eventually, Sergeant Anna Brawley arrived. Sergeant Brawley asked plaintiff what he was doing with a razor blade in his clock radio. (Docket No. 1-3 at 7). Plaintiff replied that he had no idea there was a razor blade in his clock radio and denied that it belonged to him. When he asked to see the razor blade, he was informed that it had already been disposed.[2] Plaintiff asserts that he never saw the actual razor blade that was allegedly removed from his clock radio.

Plaintiff states that defendant Tippen, his cellmate, never received a conduct violation, despite the razor being discovered in a clock radio that sat upon a mutually-shared desk within the cell. (Docket No. 1-3 at 8). He also states that no attempts were made to retrieve fingerprints from the razor before it was disposed. Further, because the razor was disposed, it was not produced at the disciplinary hearing. Instead, only a photograph of the alleged razor was presented.

Plaintiff's disciplinary hearing began on June 12, 2017. (Docket No. 1-3 at 9). The hearing officer was defendant Francis. The June 12th hearing was "tabled" so that Officer Francis could interview plaintiff's sole witness, his cellmate Tippen. Plaintiff's disciplinary hearing was reconvened on June 23, 2017. Plaintiff claims this was an "unusually long time" for his hearing to be delayed, and that interviewing a witness should not have constituted an extenuating circumstance such that his hearing should have been tabled in the first place. He further states that he was denied inmate counsel because he was not being charged with a "major violation."

At the hearing, plaintiff submitted a statement and a "list of exculpatory evidences."

---

[2] According to the Conduct Violation Report attached to the complaint as an exhibit, the razor blade was taken to medical for disposal in the sharps container. (Docket No. 1-3 at 41).

4

During the hearing, plaintiff alleges that Officer Francis told him that "your evidence is very compelling." (Docket No. 1-3 at 10). Nevertheless, Officer Francis found him guilty of the violation on June 23, 2017. In so finding, Officer Francis relied on Officer Flieg's report that he had found a loose razor blade in the battery compartment of plaintiff's clock radio during a routine cell search. (Docket No. 1-3 at 43). Plaintiff notes that Officer Francis' report did not mention the photograph of the alleged razor blade taken from his cell.[3] (Docket No. 1-3 at 11).

Plaintiff states that he received this conduct violation eight days after filing an informal resolution request (IRR), which is the first step in the grievance process. (Docket No. 1-3 at 10). His grievance alleged that "the prison had removed envelopes from a packet" from his attorney without his knowledge, permission, or a warrant. Plaintiff further notes that he has two pending civil actions pursuant to 42 U.S.C. § 1983, both of which name the Missouri Department of Corrections and its medical contractor as defendants. The second of these lawsuits is *Postawko v. Corizon, Inc., et al.*, No. 2:16-cv-04219 (W.D. Mo.), a class action lawsuit in which plaintiff is represented by the American Civil Liberties Union and the MacArthur Justice Center. According to plaintiff, this class action lawsuit could potentially cost the Missouri Department of Corrections over five-hundred million dollars to resolve. (Docket No. 1-3 at 11).

Plaintiff lists a number of so-called anomalies that he insists cast doubts on his disciplinary hearing and the underlying conduct violation. First, he states that in his twenty-two plus years as an inmate, he has never seen a cell-door window covered during a cell search. Second, he points to the "unusually long duration of time to hear this minor violation." Finally, plaintiff asserts that only a few weeks prior to his alleged conduct violation, he was laterally transferred from Jefferson City Correctional Center (JCCC) to ERDCC. (Docket No. 1-3 at 12). He states that he did not request this transfer and that his razor blade violation at ERDCC is the

---

[3] Plaintiff specifically states that he is not challenging Officer Flieg's right to search his cell at will.

first such violation during plaintiff's twenty-two years of incarceration. (Docket No. 1-3 at 12-13). Plaintiff concludes that the transfer from JCCC to ERDCC, and the subsequent conduct violation at ERDCC, is retaliation for his filing of lawsuits.

Several months after his conduct violation, plaintiff learned from fellow inmate Eugene LaMartina that an anonymous letter had been sent to the housing unit caseworker prior to the search of plaintiff's cell. (Docket No. 1-3 at 13). According to LaMartina, the letter stated that plaintiff had contraband, and that defendants Francis and Leggit had positively identified the handwriting in the anonymous letter as that of defendant Tippen. Plaintiff states that information concerning this putative letter was never mentioned or submitted as evidence at the disciplinary hearing.

On June 3, 2017, the day of plaintiff's conduct violation, he states that he was sitting in his cell waiting to go to lunch when he noticed that the trash bag beneath the sink was full. (Docket No. 1-3 at 14). He was going to empty it when his cell was opened for lunch, but forgot. However, after Sergeant Brawley allowed him to return to his cell after the cell search, he noticed that the trash had been emptied. Plaintiff asked his cellmate, Tippen, if he had emptied the trash, and Tippen replied "no." He states that he would have noticed if Officer Flieg had emptied the trash during the cell search, and asserts that it is unreasonable to think that this would have happened anyway. Instead, plaintiff states that the logical deduction is that defendant Tippen emptied the trash bag before leaving for lunch and then lied about it. (Docket No. 1-3 at 15).

Plaintiff states that following his finding of guilt, he timely filed an IRR to initiate an appeal of his conduct violation. He also sent letters to defendants Precythe, Prudden, and Steele, but received no responses from them. In his letters, plaintiff requested that he be administered a

"constant voice stress analysis" (CVSA) at his own expense.[4] (Docket No. 1-3 at 67-68). He also requested that defendants Flieg and Tippen "be officially asked to volunteer" for the CVSA to show that they had "nothing to hide." (Docket No. 1-3 at 67).

Plaintiff's complaint contains a section listing what plaintiff asserts are "exculpable evidences." (Docket No. 1-3 at 16). He alleges that based on his two pending § 1983 actions, the defendants had "proper motives for retaliation," and thus, he "may be innocent of the charge." He further states that an inmate is never the sole person with access to his personal property, and that it is common for inmates to hide their contraband in the property of others. (Docket No. 1-3 at 17). Plaintiff also notes that the covering of the window in his cell door suggests that the search of his cell was not "routine."

Plaintiff notes that he has not had a major conduct violation or contraband violation in twenty-two years of incarceration. At the time of his conduct violation, he had been entirely violation-free for the previous seven years. Plaintiff states that eight days prior to the conduct violation, he filed a grievance regarding the alleged tampering of his mail, which suggests retaliation. Moreover, three weeks prior to the conduct violation, he had counsel appointed in one of his federal civil rights cases.[5] Plaintiff states that he is serving two parole-eligible life sentences, and at the time of the conduct violation, he was less than three years from his first opportunity at parole. (Docket No. 1-3 at 18). As such, he asserts he would not take such a stupid and senseless risk as to hide a razor in his clock radio. Plaintiff alleges that this "large amount of exculpable evidence" was disregarded by the hearing officer in violation of his due process rights. (Docket No. 1-3 at 19).

Plaintiff requests that the Court enter an order declaring each defendant guilty and

---

[4] A voice stress analysis is a type of polygraph examination that reports on whether a person's answers to posed questions are deceptive or not. *See Woods v. Arkansas Dep't of Corr.*, 329 Fed. Appx. 688, 691 n.3 (8th Cir. 2009).
[5] Plaintiff provides the citation as "Case No. 15-04281-cv-c-NKL."

finding them liable for damages in an amount that the Court deems adequate and sufficient. (Docket No. 1-3 at 31-32). He also seeks an injunctive order to "expunge all traces" of his conduct violation report from his prison records and files. (Docket No. 1-3 at 32).

Plaintiff initially filed this case in the Circuit Court of St. Francois County, Missouri, on May 11, 2018. The case was docketed as *Postawko v. Prerythe*,[6] No. 18SF-CC00082 (24th Judicial Circuit, St. Francois County). On June 29, 2018, defendants Precythe, Steele, and Flieg filed a notice of removal from St. Francois County Circuit Court to the United States District Court for the Eastern District of Missouri. (Docket No. 1).

## Discussion

Plaintiff brings this action under 42 U.S.C. § 1983 and article 1, section 10 of the Missouri Constitution. (Docket No. 1-3 at 3). He names as defendants Anne Precythe; Cyndi Prudden; Troy Steele; Nicole Francis; Scott Flieg; Unknown Leggit; and Richard Tippen. Defendants are sued in both their official and individual capacities. Plaintiff alleges that defendants retaliated against him for his use of the grievance system and for his filing of lawsuits. The nature of this retaliation concerns a conduct violation of which plaintiff insists he is innocent. For the reasons discussed below, the Court must dismiss all of plaintiff's official capacity claims for failure to state a claim. The Court must also dismiss plaintiff's individual capacity claims against defendants Precythe, Prudden, Steele, Francis, Leggit, and Tippen. However, the Court will direct the Clerk of Court to issue process upon defendant Flieg in his individual capacity on plaintiff's First Amendment retaliation claim.

---

[6] The Clerk of the Circuit Court of St. Francois County docketed the case with the name of defendant Anne Precythe misspelled.

## A. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

Defendants Precythe, Prudden, Steele, Francis, Flieg, and Leggit are employed by the Missouri Department of Corrections. The Missouri Department of Corrections is a state agency of the State of Missouri. Therefore, plaintiff's claims against defendants in their official capacities are actually claims against the State of Missouri, their employer. As noted above,

however, neither a State nor its officials are "persons" for purposes of 42 U.S.C. § 1983. Accordingly, plaintiff has failed to state a claim against these defendants in their official capacities.

Even if this were not the case, plaintiff has not shown that the Missouri Department of Corrections is liable for his alleged constitutional violations. A governmental entity can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of a governmental entity.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations

by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can show the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's extensive complaint contains no allegations pertaining to any policy, custom, or failure to train or supervise on the part of the Missouri Department of Corrections. As such, plaintiff has failed to state a claim against it. Therefore, plaintiff's official capacity claims must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**B. Individual Capacity Claims Against Defendant Tippen**

Plaintiff's individual capacity claims against defendant Tippen must be dismissed because Tippen is not a state actor.

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, only state actors can be held liable under § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law"). Likewise, article I, section 10 of the Missouri Constitution protects against state governmental action through the executive, legislative, or judicial authority, and is not applicable to the acts of individuals as they affect the rights of other individuals. *Fed. Nat. Mortg. Assoc. v. Howlett*, 521 S.W.2d 428, 439 (Mo. 1975).

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

At the time relevant to this case, Tippen was incarcerated at ERDCC and was plaintiff's cellmate. (Docket No. 1-3 at 4). According to plaintiff, Tippen has subsequently been released on parole.

Plaintiff suggests that Tippen is the one who actually placed the contraband in the clock radio. (Docket No. 1-3 at 5). He notes that Tippen "took an unusually long time to enter the chow-hall," and that Tippen only entered the cafeteria as plaintiff exited. (Docket No. 1-3 at 14). He further states that the clock radio in which the razor was found was located in a shared space in their cell and did not require tools to open. (Docket No. 1-3 at 8). Plaintiff also alleges that sometime prior to the cell search, Tippen wrote an anonymous letter to the housing unit caseworker accusing plaintiff of having contraband. (Docket No. 1-3 at 13). Despite sharing a cell in which contraband was found, Tippen was "rewarded" by not receiving a conduct violation report. (Docket No. 1-3 at 16).

Plaintiff further claims that Tippen secreted the razor blade at defendant Flieg's request and acted as Flieg's "helper." (Docket No. 1-3 at 20). However, plaintiff offers no facts to show that Flieg and Tippen had a mutual understanding, or that Tippen willfully participated at Flieg's behest. Indeed, plaintiff admits as much, when he states that he "acknowledges here that Defendant Flieg *may* have used his position of authority to coerce Defendant Tippen into abetting him…" (Docket No. 1-3 at 21) (emphasis added). Plaintiff relies entirely on unsupported speculation in drawing his conclusion that Tippen was directed to hide the contraband in plaintiff's clock radio. He provides no facts to show that Flieg or any other correctional officer or employee conspired with Tippen to hide contraband in plaintiff's property for the purpose of getting him in trouble. In place of facts he provides only conjecture and guesswork without any evidentiary premise. The Court is not required to treat such conclusory

pleadings as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Accordingly, because plaintiff has failed to demonstrate that Tippen is a state actor, his individual capacity claims against defendant Tippen must be dismissed under both § 1983 and the Missouri Constitution's due process clause.

### C. Individual Capacity Claims Against Defendants Precythe, Prudden, and Steele

Plaintiff's individual capacity claims against defendant Precythe, Director of the Missouri Department of Corrections, defendant Prudden, Zone Director for the Missouri Department of Corrections, and defendant Steele, the Warden at ERDCC, must be dismissed because plaintiff has not alleged their personal responsibility for any constitutional violation.

Vicarious liability is inapplicable to § 1983 suits. *Marsh*, 902 F.3d at 754. As such, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of constitutional rights. *See Jennings v. Wentzville*

*R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). *See also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) ("A supervisor may be liable under § 1983 if he (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts").

Plaintiff alleges that defendants Precythe, Prudden, and Steele violated his Fourteenth Amendment right to due process by "not correcting this miscarriage of justice after being well notified."[7] (Docket No. 1-3 at 31). He states that this was within "the scope and purview of their authority" as "upper echelon officials in the Missouri Department of Corrections."

Plaintiff does not allege that defendants Precythe, Prudden, or Steele had any personal involvement in the alleged planting of the razor blade in his clock radio. Nor does he allege that they had any involvement in his subsequent disciplinary hearing. Furthermore, his complaint contains no mention of any deliberately indifferent failure to train. Instead, plaintiff relies on the fact that he sent defendants Precythe, Prudden, and Steele letters about his conduct violation, and did not receive replies from them. The mere sending of a letter, without more, is not enough to establish the personal liability of Precythe, Prudden, or Steele for any alleged constitutional violations. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (stating that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

---

[7] In his complaint, plaintiff presents these claims as arising under "substantive due process." (Docket No. 1-3 at 31). However, the United State Supreme Court has noted its reluctance to expand the concept of substantive due process. *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016). Thus, when "a particular constitutional amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Greenman v. Jessen*, 787 F.3d 882, 890 (8th Cir. 2015). Moreover, "a substantive due process plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181-82 (8th Cir. 2003) (italics in original). Plaintiff has not demonstrated the violation of any fundamental right. Accordingly, the Court will analyze his claims under the Fourteenth Amendment, which provides an explicit textual source for the protection of due process.

At various points in the complaint, plaintiff also suggests that he should have been allowed to receive a voice stress analysis at his own expense. He states that he did not receive a response from defendants Precythe, Prudden, or Steele to those requests. To the extent that plaintiff is asserting that his inability to take a voice stress analysis violates his due process rights, such a claim must fail. Plaintiff does not have a constitutional right to a voice stress analysis as part of the prison disciplinary proceedings against him. *See Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (stating that an inmate charged with a major conduct violation was not entitled to a polygraph examination as to whether he participated in planning or furthering an escape); *Hill v. Rectenwald*, 2010 WL 2610667, at *3 (E.D. Ark. 2010) (stating that plaintiff did not have constitutional right to use of a voice stress analysis in conjunction with an investigation into his complaints against a prison doctor); and *Boyd v. Anderson*, 265 F. Supp. 952, 962 (N.D. Ind. 2003) (stating that the "due process clause does not guarantee that a prisoner charged with a disciplinary offense will receive a voice stress test"). Accordingly, for these reasons, plaintiff's individual capacity claims against defendants Precythe, Prudden, and Steele brought pursuant to § 1983 must be dismissed.

## D. Individual Capacity Claim Against Defendant Francis

Plaintiff's individual capacity claim against defendant Francis must be dismissed because the allegation that she ruled against plaintiff in his disciplinary hearing does not state a claim.

In order to prevail on a Fourteenth Amendment due process claim, a plaintiff must first demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due

process or not"). As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847.

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, in order to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

Plaintiff's allegations against defendant Francis center on his accusation that Francis found plaintiff guilty at his disciplinary hearing despite what plaintiff contends is his "exculpatory" evidence. (Docket No. 1-3 at 9). He further complains that Francis' written explanation did not state why plaintiff's evidence was disregarded; that Francis' explanation makes no mention of the photocopy of the razor blade; and that the anonymous letter supposedly written by defendant Tippen was not mentioned or presented at the hearing. (Docket No. 1-3 at 11, 13).

Plaintiff's liberty interest, however, is in the nature of his confinement, not in the procedures by which the state believes it can best determine how he should be confined. *See Phillips*, 320 F.3d at 847. To that end, plaintiff states that he received thirty days in-cell restriction, during which he remained in his normal cell, but could not exercise or make phone calls and had three showers a week. (Docket No. 1-3 at 28). He also notes that he was placed in administrative segregation for protective custody status, though he does not explain what that

entails. (Docket No. 1-3 at 30).

Plaintiff's factual allegations do not suggest that the punishment following his disciplinary hearing constituted an atypical, significant deprivation. The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Plaintiff does not demonstrate that thirty days in-cell restriction was unduly long. *See Kennedy,* 100 F.3d at 641-42 (stating that plaintiff's thirty days in punitive isolation was not atypical and significant); and *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). Nor does his temporary loss of exercise privileges or phone calls constitute an atypical and significant hardship. *See Phillips*, 320 F.3d at 847 (stating that denial of exercise privileges for thirty-seven days was not an atypical and significant hardship in the context of normal prison life); *Freitas*, 109 F.3d at 1337 (stating that prisoner's "on call" status, in which he was placed in lock-up, had fewer visitors, and was not allowed phone calls, did not violate his due process rights). Because plaintiff has not shown that he experienced an atypical and significant hardship

when compared to the ordinary burdens of prison life, he has failed to demonstrate a due process violation.

To the extent plaintiff states that his conduct violation harms his consideration for parole in the future (Docket No. 1-3 at 28), there is no liberty interest in the possibility for parole. *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (per curiam) (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*, 442 U.S. 1, 9-11 (1979); *Marshall v. Mitchell*, 57 F.3d 671, 673 (8th Cir. 1995)). *See also Vratney v. Precythe*, No. 4:19-CV-00455-RLW, 2019 WL 4170249, at *4 (E.D. Mo. Sept. 3, 2019).

Accordingly, because no liberty interest was implicated by defendant Francis's alleged conduct as disciplinary hearing officer, plaintiff's individual capacity claim against Francis pursuant to § 1983 must be dismissed.

### E.  Individual Capacity Claim Against Defendant Leggit

Plaintiff's claim against defendant Leggit in his individual capacity must be dismissed for failure to state a claim.

Plaintiff accuses defendant Leggit of substantive and procedural due process violations. (Docket No. 1-3 at 31). However, he is mentioned only briefly in the complaint. Specifically, plaintiff alleges that Leggit had positively identified the handwriting in an anonymous letter sent to the housing unit caseworker as being that of defendant Tippen. (Docket No. 1-3 at 13, 62). Beyond that, plaintiff does not direct any further allegations at Leggit.

Plaintiff claims that the withholding of the letter purportedly written by Tippen from his disciplinary hearing violated his constitutional rights. However, he never makes clear why he believes the claimed withholding of the letter prejudiced him. More importantly, plaintiff never provides any facts demonstrating that defendant Leggit was the one who withheld the letter.

Indeed, he does not state any facts showing that Leggit had any involvement in his conduct violation or disciplinary hearing at all. The brief mention that he apparently analyzed the handwriting of an anonymous letter, at some point before plaintiff's conduct violation, is the only allegation leveled against him. Instead of providing further support for his claim, plaintiff instead rests on his conclusory assertion that Leggit violated his substantive and procedural due process rights. This type of pleading is insufficient to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, a "pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice"). Accordingly, plaintiff's claim against defendant Leggit in his individual capacity pursuant to § 1983 must be dismissed.

### F. Plaintiff's Claims Arising Under Article I, Section 10 of the Missouri Constitution

Plaintiff states that he has brought this action pursuant to article I, section 10 of the Missouri Constitution, as well as 42 U.S.C. § 1983. (Docket No. 1-3 at 3). Article I, section 10 of the Missouri Constitution states "[t]hat no person shall be deprived of life, liberty or property without due process of law." Mo. Const. art. I, § 10. The Missouri Supreme Court has stated that "analysis of a section of the federal constitution is strongly persuasive in construing the like section of our state constitution." *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. 2006). Specifically, the Missouri Supreme Court has construed Missouri's due process clause as being congruent with the guarantees of the Fourteenth Amendment's due process clause. *Bromwell v. Nixon*, 361 S.W.3d 393, 400 (Mo. 2012). Upon review of the complaint, and as discussed above, the Court has determined that plaintiff has not stated a Fourteenth Amendment due process violation against any of the defendants. Likewise, he has not stated a claim under article I, section 10 of

the Missouri Constitution. Accordingly, plaintiff's claims arising under Missouri's due process clause must be dismissed.

### G. Plaintiff's Missouri State Tort Violation Claims

Plaintiff alleges that all the defendants committed "Missouri State Tort Violations" against him. (Docket No. 1-3 at 32). Aside from a fleeting reference to "false charges and or false imprisonments," however, he does not specify the torts he believes were committed. (Docket No. 1-3 at 3). More pertinently, he levies the allegations regarding state tort violations against all the defendants as a group, and does so in a conclusory fashion. He makes no attempt to connect this generalized accusation to any individual defendant, or to provide facts supporting the claim against such defendant. This type of pleading is insufficient as it fails to alert each specific defendant of the nature of the claim against him or her. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) ("The essential function of a complaint…is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved"). Accordingly, plaintiff's "Missouri State Tort Violations" claims must be dismissed.

### H. Plaintiff's Retaliatory Transfer Claim

In his complaint, plaintiff states that just prior to his conduct violation, he was laterally transferred from JCCC to ERDCC. It appears that plaintiff is attempting to allege a retaliatory transfer claim. However, he has not alleged that any particular defendant in this lawsuit acted with personal animus toward him as a result of his decision to exercise his First Amendment Rights or to pursue his right of access to the courts. Specifically, he has not alleged that any of the named defendants had anything to do with his transfer, much less that they endeavored to transfer plaintiff for retaliatory reasons. Accordingly, plaintiff's retaliatory transfer claim must

be dismissed.

### I. Individual Capacity Claim Against Defendant Flieg

Plaintiff's claim against defendant Flieg alleging retaliatory discipline is sufficient for purposes of § 1915A review. While plaintiff characterizes his claim as arising under the due process clause, the Court will analyze it under the First Amendment.

"An inmate has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights." *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014). In order to establish a First Amendment retaliation claim, a plaintiff must show three things: first, that he engaged in a protected activity; second, that a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and finally, that the adverse action was at least partly motivated by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). While the filing of a false disciplinary charge itself is not actionable under § 1983, such a filing becomes actionable if it is done in retaliation for the inmate's filing of a grievance. *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994).

In this case, plaintiff has alleged that he has never had a major conduct violation or a contraband violation, and that he had been entirely violation-free for several years. He states that while at JCCC he was in the honor wing. After transferring to ERDCC, plaintiff states that he filed a grievance related to the alleged tampering of his legal mail. Plaintiff has also filed two civil rights lawsuits, one of which he claims may be costly to the Missouri Department of Corrections. Shortly after filing his grievance, plaintiff states that his cell was searched and a razor blade supposedly found in his clock radio. Plaintiff denies that the razor blade belonged to him or that he put it there. He states that the officer who conducted the search, Officer Flieg, did

so in a suspicious manner. Specifically, Officer Flieg nearly closed the cell door while inside the cell, and covered the window so that plaintiff could not observe him. Plaintiff states that this was something he had never seen before. Plaintiff also claims that he never saw the razor that Flieg found in the clock radio.

Accepting these allegations as true, and giving plaintiff the benefit of the inferences to be drawn from these facts, plaintiff's § 1983 claim of retaliation is sufficient for purposes of § 1915A review. Accordingly, Flieg will be directed to answer this claim in his individual capacity.

Accordingly,

**IT IS HEREBY ORDERED** that all claims against defendants Anne Precythe, Cyndi Prudden, Troy Steele, Nicole Francis, Unknown Leggit, and Richard Tippen are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(A)(b)(1).

**IT IS FURTHER ORDERED** that plaintiff's retaliatory transfer claim is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(A)(b)(1).

**IT IS FURTHER ORDERED** that the official capacity claims against defendant Scott Flieg are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(A)(b)(1).

**IT IS FURTHER ORDERED** that all state law claims against defendant Scott Flieg are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(A)(b)(1).

**IT IS FURTHER ORDERED** that within the time prescribed by the Federal Rules of Civil Procedure, defendant Scott Flieg shall answer the individual capacity claim in plaintiff's Complaint that he retaliated against plaintiff in violation of the First Amendment.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

A separate Order of partial dismissal will accompany this Memorandum and Order.

Dated this 15th day of November, 2019.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE